IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - x
In re                                             :
                                                  :
NORTHWESTERN CORPORATION,                         :
                                                  :
           Debtor.                                :
- - - - - - - - - - - - - - - - - - - - - - - - - x
LAZARD FRÈRES & CO. LLC                           :
                                                  :
           Appellant,                             :
                                                  :   Civil Action No. 05-395 (JJF)
                                                  :
       v.                                         :   Bankruptcy Case 03-12872 (JLP)
                                                  :
NORTHWESTERN CORPORATION,                         :
                                                  :
           Appellee.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - x
```

**APPELLANT LAZARD FRÈRES & CO. LLC'S
OPENING BRIEF ON APPEAL**

Anthony W. Clark (I.D. No. 2051)
Albert T. Powers III (I.D. No. 4490)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Appellant Lazard Frères & Co. LLC

Filed:  Wilmington, Delaware
        January 4, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF PROCEEDING .......................................................................1

SUMMARY OF ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ..................................................................................................3

ARGUMENT ......................................................................................................................5

I.      STANDARD OF REVIEW ON APPEAL ...............................................................5

II.     THE BANKRUPTCY COURT ERRED IN NOT APPROVING THE
        FULL RESTRUCTURING FEE TO LAZARD PURSUANT TO THE
        TERMS OF THE ENGAGEMENT LETTER..........................................................6

        A.      Lazard's Restructuring Fee Was Reasonable Compared To Rates
                Charged For Comparable Financial Advisory Services...........................6

        B.      The Restructuring Fee Was Reasonable In Relation To The
                Benefits Lazard Provided To The Debtor's Estate...................................9

CONCLUSION..................................................................................................................15

i

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

In re Busy Beaver Bldg. Ctrs.,
    19 F.3d 833 (3d Cir. 1994)……………………...…………...………..... 6, 7

In re Cable & Wireless USA, Inc., et al.,
    Case No. 03-13711 (CGC) (Bankr. D. Del., Jul. 14, 2004) (order confirming plan
    of reorganization)…..............................................................……………… 13

In re EXDS, Inc. (f/k/a Exodus Communications, Inc.), et al.,
    Case No. 01-10539 (SLR) (Bankr. D. Del., Jun. 5, 2002) (order confirming plan
    of reorganization)…………………………………………..…………… 12

In re GenTek, Inc., et al. and Noma Company,
    Case No. 02-12986 (MFW) (Bankr. D. Del., Oct. 7, 2003) (order confirming plan
    of reorganization)…………………………………………..……………….. 13

Houlihan, Lokey, Howard & Zukin Capital, Inc. v. Northwestern Corp.
    (In re Northwestern Corp.), 332 B.R. 534 (D. Del. 2005)……...……..…….... 5

In re Intelogic Trace, Inc.,
    188 B.R. 557 (Bankr. W.D. Tex. 1995)…………………………………... 6, 7, 9

In re Metromedia Fiber Network, Inc., et al.,
    Case No. 02-22736 (ASH) (Bankr. S.D.N.Y., Aug. 21, 2003) (order confirming
    plan of reorganization)………………………………………..…..… 13

In re National Energy & Gas Transmission, Inc. (f/k/a PG&E National Energy Group,
    Inc.), et al., Case No. 03-30459 (PM) (Bankr. D. Md., May 3, 2004) (order
    confirming plan of reorganization)…………………………..…………….. 13

In re New Global Telecom, Inc.,
    Case No. 01-1869 (GMS) (Bankr. D. Del., Apr. 16, 2002) (order confirming plan
    of reorganization)………………………………………………..…… 12

In re Northwestern Corp.,
    324 B.R. 538 (Bankr. D. Del. 2005)…..………………………………….... 1

In re Patronek,
    121 B.R. 728 (Bankr. E.D. Pa. 1990)…………………………...……….. 7

In re RCN Corp., et al.,
    Case No. 04-13638 (RDD) (Bankr. S.D.N.Y., Dec. 8, 2004) (order confirming
    plan of reorganization)…………………………………….…..………… 13

Schlumberger Res. Mgmt. Servs., Inc. v. Cellnet Data Sys., Inc.  (In re Cellnet Data Sys., Inc.) 327 F.3d 242 (3d Cir. 2003)………………………………………............ 5

In re SLI, Inc., et al.,
     Case No. 02-12608 (MFW) (Bankr. D. Del., Jun. 19, 2003) (order confirming plan of reorganization)……………………………………..………...……...… 13

United States v. United States Gypsum Co.,
     333 U.S. 634 (1948)………………………………………………………………… 5

In re XO Communications, Inc.,
     Case No. 02-12947 (AJG) (Bankr. S.D.N.Y., Nov. 15, 2002) (order confirming plan of reorganization)……………………………………….………………… 12

**STATUTES AND RULES**                                          **PAGE(S)**

11 U.S.C. § 328……….…………………………………...……………………..……… 14

11 U.S.C. § 330……….……………………………………………………....… 4, 6, 9

## NATURE AND STAGE OF PROCEEDING

On May 5, 2005, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") issued its memorandum opinion and order on the final fee application of appellant Lazard Frères & Co. LLC ("Lazard"), as financial advisor and investment banker to NorthWestern Corporation ("NorthWestern" or the "Debtor") which, *inter alia*, awarded Lazard only half of a $5.5 million "Restructuring Fee" provided for in a letter agreement (the "Engagement Letter") between the Debtor and Lazard which set forth the terms of Lazard's retention and was approved by the court below at the beginning of the Debtor's bankruptcy case. *In re Northwestern Corp.*, 324 B.R. 538, 539, 547-48 (Bankr. D. Del. 2005) (the "Opinion").[1] Lazard filed its notice of appeal from this decision in the Bankruptcy Court on May 10, 2005 (D.I. No. 1),[2] and filed its Statement Of Issues On Appeal And Designation Of Items To Be Included In The Record in this Court on June 15, 2005. (D.I. No. 2)[3] On June 29, 2005, this Court appointed a mediator for the matter (D.I. No. 4), but because no other party in interest opposes the appeal, it could not be resolved by mediation. Therefore, on December 20, 2005, the Court entered an order setting the briefing schedule on appeal. (D.I. No. 7) This is Lazard's opening brief in support of its appeal.

---

[1]    The Bankruptcy Court also awarded Lazard "hourly" fees of $2,892,060.00 and expenses of $97,701.62. Opinion, 324 B.R. at 547-48. Lazard has not appealed that aspect of the decision below; rather, this appeal relates solely to the Restructuring Fee award.

[2]    The docket numbers of items filed in this Court are noted as "D.I. No. __."

[3]    Copies of the documents designated for the record on appeal were tabbed (nos. 1 through 61) and provided to the Court and are cited herein as "Tab No. __ at __."

## SUMMARY OF ARGUMENT

1.    The Bankruptcy Court erred in (i) holding that Lazard's request for approval of the Restructuring Fee in the amount provided in its Engagement Letter with the Debtor did not meet the criteria in 11 U.S.C. § 330(a)(3), and (ii) reducing the Restructuring Fee by half, where no party in interest objected to Lazard's final fee application, including the request for approval of the full Restructuring Fee.

## STATEMENT OF FACTS

On September 14, 2003, NorthWestern, a public utility in the Upper Midwest and Northwest, filed a petition under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*,[4] in the Bankruptcy Court. (Tab No. 1 at 2, ¶¶ 2, 4)

On September 17, 2003, the Debtor applied to retain Lazard as its financial advisor in accordance with the terms of the Engagement Letter submitted with the application. (Tab No. 1, Exhibit C) Lazard's compensation under the Engagement Letter was $200,000 per month plus expenses and a $5.5 million "Restructuring Fee" upon "the earlier of execution of definitive agreements with respect to a Restructuring and delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the Restructuring." (*Id.* at 3) Lazard's entitlement to the Restructuring Fee was not conditioned on achieving a recovery for the equity holders. No one filed an objection to Lazard's retention or the terms of the Engagement Letter. On October 10, 2003, the Bankruptcy Court, Bankruptcy Judge Charles Case presiding, granted the Debtor's application and approved the Engagement Letter, including the $5.5 million Restructuring Fee, subject to final review under sections 328 and 330. (Tab No. 2)

On August 18, 2004, the Debtor filed its proposed second amended and restated reorganization plan (the "Plan") (Tab No. 31) and disclosure statement. (Tab No. 32) On October 19, 2004, the Bankruptcy Court confirmed the Plan, which became effective November 1, 2004. (Tab No. 45)

---

[4]    All section citations herein are to the Bankruptcy Code.

3

Since the conditions in the Engagement Letter had been satisfied, on December 1, 2004, Lazard applied for final approval of the full Restructuring Fee. (Tab No. 50) On January 11, 2005, the court-appointed fee auditor filed its report recommending that the full $5.5 million Restructuring Fee be approved under sections 328 and 330. (Tab No. 55) Lazard also submitted uncontested evidence of the fees charged in other comparable restructuring and non-bankruptcy change-of-control transactions; this document, Exhibit 1 admitted into evidence at the hearing on Lazard's final fee application (*see* Tab No. 58 at 14-17, 31), which also was attached to the fee auditor's report (Tab No. 55 at 25-29), is attached hereto for ease of reference. No party in interest – none of the common equity holders, preferred equity holders, the Unsecured Creditors' Committee, the United States Trustee, or the Debtor – objected to Lazard's final fee application. *See* Opinion, 324 B.R. at 539.

On May 5, 2005, the Bankruptcy Court – Bankruptcy Judge John L. Peterson presiding this time – issued a decision that *sua sponte* cut Lazard's previously approved Restructuring Fee in half, to $2.75 million, and found that Lazard's uncontested evidence did not meet the criteria of section 330(a)(3)(E).[5] *See* Opinion, 324 B.R. at 547-48.

---

[5]     Section 330(a)(3) now provides:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

Continued...

# ARGUMENT

## I.    STANDARD OF REVIEW ON APPEAL

On appeal, the Bankruptcy Court's conclusions of law – *i.e.*, its interpretation of section 330(a)(3) – are subject to *de novo* review. *Schlumberger Res. Mgmt. Servs., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.)*, 327 F.3d 242, 244 (3d Cir. 2003). The Bankruptcy Court's findings of fact are reviewed for clear error, *i.e.*, "when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Houlihan, Lokey, Howard & Zukin Capital, Inc. v. NorthWestern Corp. (In re NorthWestern Corp.)*, 332 B.R. 534 (D. Del. 2005). Applying these standards here, the Bankruptcy Court's decision to cut Lazard's Restructuring Fee in half should be reversed.

---

(continued)

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Because the statute has since been amended to add a new subsection, what is now subsection (F) was subsection (E) at the time of the decision below.

5

II.    **THE BANKRUPTCY COURT ERRED IN NOT APPROVING THE FULL RESTRUCTURING FEE TO LAZARD PURSUANT TO THE TERMS OF THE ENGAGEMENT LETTER.**

Courts reviewing professional compensation under section 330(a)(3) consider the nature, extent and value of the services, taking into account the time spent, the rates charged, whether the services were necessary or beneficial, whether the services were performed within a reasonable time commensurate with the complexity of the issues, and whether the compensation is reasonable compared with customary compensation charged in non-bankruptcy cases.

When assessing "success" or "restructuring" fees under section 330(a), the market rate and value of the bankruptcy professional's services generally determine what is reasonable. "When we examine 'success fees,' some of [the factors listed in section 330(a)(3)] drop away, such as the 'time spent' or the 'rates charged.' That the services might have been beneficial or necessary is of course highly relevant, however, as is whether the compensation approximates the practice outside bankruptcy." *In re Intelogic Trace, Inc.*, 188 B.R. 557, 559 (Bankr. W.D. Tex. 1995).

As discussed below, Lazard is entitled to the full $5.5 million Restructuring Fee. Under section 330(a)(3), that fee is reasonable in light of the market rates for comparable financial advisory and investment banking services and the value of the services provided by Lazard to the Debtor and its estate.

A.    **Lazard's Restructuring Fee Was Reasonable Compared To Rates Charged For Comparable Financial Advisory Services.**

The "cost of comparable services factor has an overarching role to act as a guide to the value of the services rendered . . . ." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 849 (3d Cir. 1994). Thus, section 330(a)(3) mandates a market analysis: "[i]f the

marketplace naturally establishes a price for a service, then we believe that it is logical to assume that this is the [proper] figure." *In re Patronek*, 121 B.R. 728, 731 (Bankr. E.D. Pa. 1990).

Section 330(a)(3) sets an objective, not subjective, review standard for professional responsibilities and fees. The Third Circuit Court of Appeals expressly "disapprove[s] of any approach that allows a court confronted with undisputed, credible, contrary evidence of market practices in the record to rely solely on its own judgment" when reviewing a fee application. *In re Busy Beaver*, 19 F.3d at 848. When courts set "arbitrary guidelines [they] risk being so far out of step with the marketplace that they skew the process, driving away competent professionals." *In re Intelogic Trace*, 188 B.R. at 560 n.3. Accordingly, competent evidence with respect to the market value of a professional's fees must prevail over any subjective judgment.

The *only* evidence in the record before the Bankruptcy Court established that the full $5.5 million Restructuring Fee is reasonable compared with the market for similar financial advisory and investment banking services. The Debtor's enterprise value and funded debt were about $1.5 billion and $2.2 billion, respectively. *See* Opinion, 324 B.R. at 543 (funded debt) and 545 (enterprise value). Exhibit 1 summarizes the fees charged by financial advisors representing debtors of similar size (funded debt of $1.6 billion to $2.4 billion) in a dozen recent restructuring transactions, both in and out of court. The average restructuring/success fee charged in those transactions was $6.2 million, or 0.32% of funded debt. The $5.5 million Restructuring Fee here was lower – only 0.25% of the Debtor's funded debt.

The Bankruptcy Court concluded, without support, that "the majority, if not all, of the cases relied upon by Lazard are fees assessed in bankruptcy, not non-bankruptcy cases, [which] therefore do not meet the criteria of section 330(a)(3)(E)."[6] Opinion, 324 B.R. at 547. To the contrary, Lazard provided uncontested evidence of financial advisor fees paid by sellers in 65 recent non-bankruptcy change-of-control transactions in the $1.0 billion to $2.0 billion range. (*See* Exhibit 1) There, the average fee of $8.0 million was 0.6% of the total enterprise value ("TEV"), while here, the $5.5 million Restructuring Fee was only 0.37% of the Debtor's enterprise value.

The Bankruptcy Court rejected reliance on the non-bankruptcy comparable transactions proffered by Lazard because the Debtor's "case did not involve a sale transaction." Opinion, 324 B.R. at 543. This was erroneous. While Lazard did assist the Debtor in assessing third party acquisition proposals, the Debtor, Lazard, the Unsecured Creditors' Committee and the stakeholders agreed that the standalone Plan would provide greater value for the estate. (*See* Tab No. 32 at 48-49) That Plan was a debt-for-equity exchange in which the former stockholders' equity interests were extinguished, and the equity in the reorganized entity, in effect, was "sold" to a group of new owners, *i.e.*, the former creditors, for the market value of their claims against the Debtor. (*See generally* Tab Nos. 31, 32) The economic reality is that the Plan was a change-of-control transaction just as much as the non-bankruptcy sales cited by Lazard

---

[6]     The Bankruptcy Court also stated that this was "conceded at the hearing" on Lazard's final fee application. Opinion, 324 B.R. at 547. That is wrong.  No such concession was made, and none is reflected in the February 10 and April 5, 2005 hearing transcripts.  (Tab Nos. 56, 58)

and, in fact, was better than the third party offers that were rejected by the stakeholders in the Debtor's case.[7]

In sum, all of the record evidence shows that the $5.5 million Restructuring Fee sought by Lazard compared favorably to market rates for financial advisors in comparable restructuring and non-bankruptcy change-of-control transactions. No contrary evidence was offered or cited by the Bankruptcy Court. Therefore, as section 330(a)(3) provides, the requested Restructuring Fee "is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than [bankruptcy] cases" and should have been approved.

### B.    The Restructuring Fee Was Reasonable In Relation To The Benefits Lazard Provided To The Debtor's Estate.

Courts also assess the "value" provided to the debtor, its estate and creditors through the professional's efforts. Fees awarded to bankruptcy professionals should bear a reasonable relationship to "what the benefit in question really was." *In re Intelogic Trace*, 188 B.R. at 561.

When Lazard initially was retained pre-bankruptcy, in the spring of 2003, NorthWestern was in dire circumstances. Its relationship with Montana regulators was

---

[7]    The Debtor's enterprise value upon emergence from bankruptcy on November 1, 2004 was estimated to be $1.5 billion, consisting of $790 million of debt plus $710 million for 35.5 million shares of new common stock issued to the creditors at an estimated value of $20 per share. (*See* Tab No. 32 at 94) The Class 7 and Class 9 creditors received 91% of the new equity, with an estimated recovery at these values of 68.4%. (*See id.* at 7-12) NorthWestern stock closed at $31.07 per share on December 30, 2005. (*See* Exhibit 2 hereto) At that price, the Class 7 and 9 creditors who received equity under the Plan and held onto the stock have now recovered 100% of the amount of their claims plus about 6% interest since NorthWestern emerged from bankruptcy 14 months ago.

strained (*see* Tab No. 32 at 23-24), and several significant litigations were pending. (*Id.* at 39-48) NorthWestern faced a liquidity crisis with a $31 million interest payment on its unsecured senior indebtedness coming due in September. Lazard worked closely with the Debtor's management and the Board to consider numerous out-of-court restructuring alternatives, *i.e.*, sales of non-core assets, debt tender offers, debt exchange offers and strategies to raise new equity. As part of this process, Lazard met with the Debtor's management on a regular basis and became familiar with the Debtor's operations and business plan, regulatory environment, competitive positioning, and capital structure. In addition, Lazard prepared an initial valuation of the Debtor, as well as debt capacity analyses, to determine the target capital structure with respect to a restructuring of the utility. (Tab No. 1, at ¶ 7).

A multi-step plan was devised for NorthWestern to negotiate a $50 million accounts receivable financing facility with GE and sell its Blue Dot and Expanets assets for around $200 million.[8] NorthWestern would use the proceeds from these transactions to make tender or exchange offers for some of its debt and follow up with an exchange of new equity for debt to increase the stock trading price, which was then below $1.00 per share. This last element required an amendment to NorthWestern's charter to authorize the shares needed for the exchanges, but the common stockholders – who would have been diluted, but at least would have retained their equity interests – rejected the proposed amendment. As a result, GE, knowing that a bankruptcy filing was possible, declined to proceed with the accounts receivable financing, the Expanets and Blue Dot

---

[8]    NorthWestern had acquired Blue Dot Services, Inc., an HVAC services company, and Expanets, Inc., an internet company, some years before the bankruptcy filing. (*See* Tab No. 32 at 20)

sales were delayed, and NorthWestern had to seek bankruptcy protection in September 2003 because it could not make the interest payment. (*Id.* at 28-30)

Yet just a year later, the Plan was confirmed, and the Debtor emerged from bankruptcy in strong financial condition with a restructured balance sheet, restored credit rating, significant liquidity, an agreement with Montana regulators, a new independent board of directors, and newly issued common stock listed on the NASDAQ. The per share value of that stock has increased from $20 under the Plan, to $28 when the fee application was heard below, to $31 today. At these prices, the return to unsecured creditors has reached 100%. (*See* n. 7 above)

Lazard's contributions to the success of the Debtor's bankruptcy case included the following (*see* Tab No. 50 at 6-8):

- quickly arranging debtor-in-possession financing, thereby demonstrating the Debtor's viability and liquidity in the early days of the bankruptcy;

- negotiating a 1.75% interest rate reduction on a prepetition credit facility, by arranging a larger, lower cost DIP that would have refinanced these lenders, which saved $6.8 million in interest per year;

- preparing valuation and debt capacity analyses that formed the basis for the Plan and resulted in NorthWestern emerging from bankruptcy with significantly less debt and improved credit ratings;

- consulting with unsecured creditors and other claim holders to develop a settlement under the Plan in a little over a year (which was a record for a utility bankruptcy and avoided the Debtor incurring further bankruptcy costs which were averaging approximately $4 million a month);

- serving as expert witness on Plan confirmation;

- negotiating a Bankruptcy Court approved settlement with Montana regulators that avoided a confirmation contest and eliminated the risk of a post-confirmation rate case;

- assisting the Debtor with credit rating agency issues;

- evaluating listing requirements for national exchanges, *e.g.*, the NYSE and the NASDAQ;

- advising the Debtor in obtaining exit financing comprised of a $125 million revolving credit facility and refinancing another $400 million of debt, which saved $5 million a year in interest, and extending maturities on other debt from 2006 to 2010;

- analyzing third party offers for the Debtor and recommending that the standalone Plan provided greater value – the right call, given NorthWestern's strong performance since emerging from bankruptcy and significant increase in share price and market value.

*See also* Opinion, 324 B.R. at 545.

In cutting the Restructuring Fee in half, Judge Peterson unfairly criticized that the Engagement Letter, approved by Judge Case, did not condition Lazard's entitlement to the full Restructuring Fee on a recovery by the Debtor's common stockholders. *See* Opinion, 324 B.R. at 545; Tab No. 58 at 25-26. As discussed above, the uncontested evidence shows that in the months preceding the bankruptcy filing, NorthWestern and Lazard devised a strategy to create value for existing equity and worked diligently to achieve that result but, in the end, were stymied by the common stockholders themselves, who rejected the required charter amendments.

It was not Lazard's fault that by the time of the bankruptcy case the Debtor had a negative net worth of $700 million to $800 million, as the Bankruptcy Court acknowledged, and a return to common equity was not possible.[9] *See* Opinion, 324 B.R.

_____

[9]      While the Bankruptcy Court cited two cases in which stockholders were fortunate enough to receive a recovery, the far more common result in large public company chapter 11 cases is that equity is extinguished. A recent sampling of such cases includes: *In re: New Global Telecom, Inc.*, Case No. 01-1869 (GMS) (Bankr. D. Del., confirmed Apr. 16, 2002); *In re: EXDS, Inc. (f/k/a Exodus Communications, Inc.), et al.*, Case No. 01-10539 (SLR) (Bankr. D. Del., confirmed Jun. 5, 2002); *In re: XO Communications, Inc.*, Case No. 02-12947

Continued...

at 545 (Debtor's enterprise value was $1.5 billion, but $2.2 billion to $2.3 billion in value was needed to produce return to stockholders). Lazard never would have agreed to serve as the Debtor's financial advisor if most of its compensation had been conditioned on achieving an impossible result, and it was unreasonable for the Bankruptcy Court to slash the Restructuring Fee in half on that basis.[10]

Most importantly, Lazard did in fact satisfy the conditions in the Engagement Letter to its right to receive the full Restructuring Fee – the effectuation of a restructuring agreed to by the required number of creditors. That compensation arrangement specifically was approved by Judge Case at the start of the case and was never found "to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions" as required by section

---

(continued)

   (AJG) (Bankr. S.D.N.Y., confirmed Nov. 15, 2002); *In re: SLI, Inc., et al.*, Case No. 02-12608 (MFW) (Bankr. D. Del, confirmed Jun. 19, 2003); *In re: Metromedia Fiber Network, Inc., et al.*, Case No. 02-22736 (ASH) (Bankr. S.D.N.Y., confirmed Aug. 21, 2003); *In re: GenTek, Inc., et al. and Noma Company*, Case No. 02-12986 (MFW) (Bankr. D. Del., confirmed Oct. 7, 2003); *In re: National Energy & Gas Transmission, Inc.(f/k/a PG&E National Energy Group, Inc.), et al.*, Case No. 03-30459 (PM) (Bankr. D. Md., confirmed May 3, 2004); *In re: Cable & Wireless USA, Inc., et al.*, Case No. 03-13711 (CGC) (Bankr. D. Del., confirmed Jul. 14, 2004); *In re: RCN Corp., et al.*, Case No. 04-13638 (RDD) (Bankr. S.D.N.Y., confirmed Dec. 8, 2004).

[10]   The Bankruptcy Court also noted some ongoing litigation concerning the Plan and concluded, unfairly, that "the post-confirmation conflicts . . . were not properly resolved by Lazard during the confirmation process." Opinion, 324 B.R. at 546. Lazard was the Debtor's financial advisor, not its legal counsel, and was not responsible for or consulted about these litigation matters.

328(a).[11]  Therefore, there was no legal basis to deny an award of the full Restructuring Fee to Lazard at the end of the case.

As discussed above, all the evidence proved that Lazard's requested compensation under the Restructuring Fee was fully earned under the express terms of the Engagement Letter approved by the Bankruptcy Court at the start of the Debtor's chapter 11 case and was in line with the market for financial advisory services in comparable restructuring and non-bankruptcy transactions as specified in section 330(a)(3).  Therefore, the Bankruptcy Court clearly erred and abused its discretion in reducing Lazard's Restructuring Fee by half, its fee order should be reversed, and Lazard's full $5.5 million Restructuring Fee should be approved.

---

[11]  The Bankruptcy Court expressly declined "to examine the improvidence issue set forth in section 328(a)."  Opinion, 324 B.R. at 541.

## CONCLUSION

For all of the foregoing reasons, the Bankruptcy Court's May 5, 2005 fee order should be reversed, and this Court should approve Lazard's final fee application for an award of the full Restructuring Fee in the amount of $5.5 million.

Dated: Wilmington, Delaware
       January 4, 2006

                          /s/ Anthony W. Clark
                          Anthony W. Clark (I.D. No. 2051)
                          Albert T. Powers III (I.D. No. 4490)
                          SKADDEN, ARPS, SLATE,
                           MEAGHER & FLOM LLP
                          One Rodney Square
                          P.O. Box 636
                          Wilmington, Delaware 19899
                          (302) 651-3000

                          Attorneys for Appellant Lazard Frères & Co. LLC

15

LAZARD EXHIBIT 1

## Response Exhibit A

### Debtor Advisor Restructuring Fees

| Company | Date Filed | Debtor Advisor | Restructuring Success Fee | Total Funded Debt | Restructuring Success Fee as % of Total Funded Debt |
|---|---|---|---|---|---|
| RCN Corp. | 05/27/04 | Blackstone Group LP | $7.0 million | $1,580 million | 0.44% |
| NorthWestern Corp. | 09/14/03 | Lazard Frères | $5.5 million | $2,200 million | 0.25% |
| Loral Space & Communications Ltd. | 07/15/03 | Greenhill | $7.0 million | $2,244 million | 0.31% |
| Westpoint Stevens | 06/01/03 | Rothschild | $8.6 million | $1,673 million | 0.51% |
| Acterna Corp. | 05/06/03 | Miller Buckfire Lewis Ying | $2.0 million | $2,082 million | 0.09% |
| Leap Wireless | 04/13/03 | UBS Warburg | $10.8 million | $2,025 million | 0.53% |
| Fleming Companies | 04/01/03 | Blackstone Group LP | $8.8 million | $2,056 million | 0.43% |
| Spectrasite Holdings | 11/15/02 | Lazard Frères | $5.4 million | $2,435 million | 0.22% |
| Versatel Telecom International | 06/19/02 | Lazard Frères | $1.8 million | $1,736 million | 0.11% |
| Covanta Energy Corporation | 04/01/02 | Chilmark | $5.2 million | $1,869 million | 0.28% |
| Telecom Company | 2002 | Lazard Frères, Goldman Sachs, DKW | $9.1 million | $1,988 million | 0.46% |
| *Steel Manufacturer* | 2002 | Lazard Frères | $4.8 million | $1,893 million | 0.25% |
| | | Average | $6.2 million | $1,990 million | 0.32% |
| | | Adjusted Average [a] | $6.2 million | $1,986 million | 0.32% |
| | | Median | $6.3 million | $2,040 million | 0.30% |

Response Exhibit B

Fee Run, Ranking Value $1-$2 billion
1/1/2000-
1/3/2005

| Date Announced | Acquiror Name | Target Name | TEV | Target Advisor Fees | Fees / TEV |
|---|---|---|---|---|---|
| 10/20/2004 | Blackstone Real Estate | Boca Resorts Inc | $1,188.2 | $3.0 | 0.3% |
| 9/13/2004 | WPP Group PLC | Grey Global Group Inc | $1,238.2 | $13.4 | 1.1% |
| 8/16/2004 | LifePoint Hospitals Inc | Province Healthcare Co | $1,704.7 | $10.7 | 0.6% |
| 8/2/2004 | Fifth Third Bancorp,Cincinnati | First National Bankshares FL | $1,635.4 | $12.3 | 0.8% |
| 7/27/2004 | Cooper Companies Inc | Ocular Sciences Inc | $1,129.7 | $9.0 | 0.8% |
| 7/13/2004 | Bank of America Corp | National Processing Inc | $1,135.9 | $6.8 | 0.6% |
| 7/1/2004 | Charles River Labs Int | Inveresk Research Group Inc | $1,556.7 | $12.2 | 0.8% |
| 5/18/2004 | Marsh & McLennan Cos Inc | KrollInc | $1,886.7 | $9.5 | 0.5% |
| 5/3/2004 | Investor Group | Keystone Property Trust | $1,375.6 | $5.1 | 0.4% |
| 3/29/2004 | Leonard Green & Partners LP | Hollywood Entertainment Corp | $1,021.9 | $3.5 | 0.3% |
| 3/22/2004 | Welsh Carson Anderson & Stowe | US Oncology Inc | $1,282.2 | $8.3 | 0.6% |
| 3/15/2004 | BancWest Corp,Honolulu,HI | Community First Bankshares,ND | $1,213.4 | $6.1 | 0.5% |

(a) Excludes minimum and maximum values.

| Date | | | | | |
|---|---|---|---|---|---|
| 2/10/2004 | ST Assembly Test Services Ltd | ChipPAC Inc | $1,564.0 | $21.0 | 1.39% |
| 2/9/2004 | Boyd Gaming Corp | Coast Casinos Inc | $1,291.1 | $5.6 | 0.4% |
| 1/13/2004 | Abbott Laboratories | TheraSense Inc | $1,169.7 | $9.9 | 0.8% |
| 12/21/2003 | Pfizer Inc | Esperion Therapeutics Inc | $1,239.6 | $10.0 | 0.8% |
| 11/25/2003 | Independence Community Bank | Staten Island Bancorp Inc,NY | $1,492.5 | $7.4 | 0.5% |
| 10/14/2003 | EMC Corp | Documentum Inc | $1,669.3 | $13.0 | 0.8% |
| 10/6/2003 | UnitedGlobalCom Inc | UGC Europe Inc | $1,352.1 | $5.8 | 0.4% |
| 9/17/2003 | AXA Financial Inc | MONY Group Inc | $1,476.0 | $15.0 | 1.0% |
| 7/14/2003 | Boise Cascade Corp | OfficeMax Inc | $1,347.8 | $12.5 | 0.9% |
| 6/2/2003 | PeopleSoft Inc | JD Edwards & Co | $1,423.8 | $13.0 | 0.9% |
| 5/14/2003 | Pennsylvania Real Estate Inv | Crown American Realty Trust | $1,313.6 | $4.3 | 0.3% |
| 1/16/2003 | Moore Corp Ltd | Wallace Computer Services Inc | $1,265.3 | $7.4 | 0.6% |
| 9/23/2002 | David H Murdock | Dole Food Co Inc | $1,919.2 | $7.4 | 0.4% |
| 7/8/2002 | eBay Inc | Paypal Inc | $1,392.3 | $1.6 | 0.1% |
| 5/13/2002 | Sears Roebuck & Co | Lands' End Inc | $1,928.2 | $11.3 | 0.6% |
| 4/13/2002 | Investor Group | Nortek Inc | $1,508.9 | $4.0 | 0.3% |
| 4/8/2002 | Ameritrade Holding Corp | Datek Online Holdings Corp | $1,360.8 | $5.0 | 0.4% |
| 2/22/2002 | Shareholders | CarMax Group | $1,068.3 | $4.0 | 0.4% |
| 2/4/2002 | Limited Inc | Intimate Brands Inc(Limited) | $1,644.7 | $2.1 | 0.1% |
| 12/18/2001 | GE Industrial Systems | Interlogix Inc | $1,012.3 | $5.3 | 0.5% |
| 10/29/2001 | CalWest Industrial Ppty | Cabot Industrial Trust | $1,905.5 | $6.4 | 0.3% |
| 9/27/2001 | Temple-Inland Inc | Gaylord Container Corp | $1,027.9 | $9.8 | 1.0% |

| Date | Acquirer | Target | | | |
|---|---|---|---|---|---|
| 8/7/2001 | Nationwide Financial Services | Provident Mutual Life | $1,560.0 | $9.0 | 0.6% |
| 7/9/2001 | International Game Technology | Anchor Gaming Inc | $1,280.2 | $6.3 | 0.5% |
| 5/23/2001 | Johnson & Johnson Inc | Inverness Medical-Diabetes | $1,300.0 | $1.0 | 0.1% |
| 5/23/2001 | Pride International Inc | Marine Drilling Cos | $1,995.9 | $11.0 | 0.6% |
| 5/1/2001 | Pulte Homes Inc | Del Webb Corp | $1,816.9 | $1.0 | 0.1% |
| 2/22/2001 | Siemens Info & Commun Grp | Efficient Networks Inc | $1,030.3 | $25.0 | 2.4% |
| 2/15/2001 | Westfield America Trust | Westfield America Inc | $1,050.8 | $1.5 | 0.1% |
| 2/5/2001 | Patterson Energy Inc | UTI Energy Corp | $1,463.9 | $2.0 | 0.1% |
| 1/24/2001 | BB&T Corp,Winston-Salem,NC | F&M National,Winchester,VA | $1,009.3 | $1.2 | 0.1% |
| 1/16/2001 | Forstmann Little & Co | Citadel Communications Corp | $1,945.5 | $10.0 | 0.5% |
| 11/13/2000 | FEDEX Corp | American Freightways Corp | $1,237.8 | $4.5 | 0.4% |
| 10/9/2000 | SmithKline Beecham PLC | Block Drug Co | $1,453.5 | $13.9 | 1.0% |
| 8/28/2000 | Fosters Brewing Group Ltd | Beringer Wine Estates Holdings | $1,455.2 | $10.7 | 0.7% |
| 8/18/2000 | AIG | HSB Group Inc | $1,430.5 | $14.3 | 1.0% |
| 6/26/2000 | WebVan Group Inc | HomeGrocer.com | $1,589.2 | $4.0 | 0.3% |
| 6/5/2000 | Thomson Corp | Primark Corp | $1,133.0 | $5.4 | 0.5% |
| 5/22/2000 | Koninklijke Philips Electronic | MedQuist Inc | $1,029.9 | $6.0 | 0.6% |
| 5/12/2000 | Ingersoll-Rand Co | Hussmann International | $1,839.6 | $8.0 | 0.4% |

| Date | Acquirer | Target | Value | | |
|---|---|---|---|---|---|
| | | Inc | | | |
| 5/8/2000 | QLogic Corp | Ancor Communication Inc | $1,698.7 | $13.5 | 0.8% |
| 5/1/2000 | Koninklijke Numico NV | Rexall Sundown Inc | $1,747.4 | $10.8 | 0.6% |
| 4/17/2000 | Sanmina Corp | Hadco Corp | $1,293.5 | $7.0 | 0.5% |
| 4/5/2000 | Peregrine Systems Inc | Harbinger Corp | $1,897.7 | $11.4 | 0.6% |
| 3/20/2000 | National Commerce Bancorp | CCB Financial Corp,Durham,NC | $1,961.4 | $7.4 | 0.4% |
| 3/8/2000 | Cybex Computer Products Corp | Apex Inc | $1,054.2 | $3.5 | 0.3% |
| 2/25/2000 | NetIQ Corp | Mission Critical Software Inc | $1,361.7 | $2.7 | 0.2% |
| 2/23/2000 | ADC Telecommunications Inc | PairGain Technologies Inc | $1,422.2 | $11.5 | 0.8% |
| 2/17/2000 | Lennar Corp | US Home Corp | $1,472.3 | $5.3 | 0.4% |
| 2/14/2000 | Healtheon/WebMD Inc | Medical Manager Corp | $1,801.0 | $8.0 | 0.4% |
| 2/14/2000 | Corning Inc | NetOptix Corp | $1,859.3 | $8.3 | 0.4% |
| 2/7/2000 | BB&T Corp,Winston-Salem,NC | One Valley Bancorp Inc,WV | $1,190.5 | $6.0 | 0.5% |
| 1/7/2000 | McLeodUSA Inc | SplitRock Services Inc | $1,964.1 | $10.6 | 0.5% |
| Average | | | $1,447.5 | $8.0 | 0.6% |

LAZARD EXHIBIT 2



# THE WALL STREET JOURNAL
ONLINE

Article Search

Advanced Search

Quotes & Research   Select

U.S

Symbol(s) | Name   Symb

Home | News | Technology | Markets | Personal Journal | Opinion | Weekend & Leisure | Portfolio | Market Data Center

You're thinking about hom
**Imagine home theater that thinks a**
The Lifestyle® 48 DVD home entertainment system.   See s

## COMPANY RESEARCH

Get Quote for Another U.S. Symbol

**QUOTES & NEWS**
Quote
Stock Charting
Industry Comparison
Valuations and Ratios
News
Press Releases
Conference Calls
**COMPANY PROFILE**
Key Facts
Executives
Insider Holdings
Insider Transactions
Institutional Holdings
**FINANCIALS**
Quarterly Earnings
Quarterly Cash Flow
Quarterly Balance Sheet
Annual Earnings
Annual Cash Flow
Annual Balance Sheet
Margins and Returns
**ESTIMATES/RATINGS**
Earnings Estimates
Analyst Ratings
**RESEARCH REPORTS**
Reuters Research
**OTHER RESOURCES**
SEC Filings
Company Website
Annual Reports

**MORE RESEARCH**

Featured Partners

**VAULT**
the most trusted name in career information™

Read NorthWestern Corp.
employees surveys:
culture, compensation &
more.

## QUOTE

### NorthWestern Corp. (NWEC)

12/30/05  04:00 p.m. EDT  NASDAQ NM

| Last | Change | % Change | 10 DAY |
|------|--------|----------|--------|
| **31.07** | **-0.05** | **-0.16%** | |

| Open | High | Low |
|------|------|-----|
| 30.98 | 31.15 | 30.82 |

| Volume | Prior Day's Volume | Prior Day's Close |
|--------|--------|--------|
| 100,980 | 69,152 | 31.12 |

| 52-Week High | 52-Week Low |
|--------------|-------------|
| **32.53** (08/03/2005) | **25.52** (03/23/2005) |

M  T  W  T  F  T  M  T  F
© BigCl

1 day | 10 day | 1 mo | 3 mo |
• Go To Stock Charting

U.S. stock prices on NYSE and AMEX are delayed 20 minutes or more, Nasdaq prices are delayed 15 m
Volume updates until the following times (ET): NYSE- 5:00 p.m., AMEX- 4:00 p.m., Nasdaq- 6:30 p.m.

### Historical Quotes

Closing prices since 1/2/1970.

date: [         ]  Go

### Other Prices

U.S.
• MORE

• Real-Time Q

• After Hours T

### Stock Data

| | |
|---|---|
| Market Cap(Mil) | 1,120.08 |
| P/E Ratio | 0.00 |
| Dividend Yield | 3.95% |
| Latest Dividend | $0.31 |
| Pay Date of Latest Dividend | 12/31/05 |
| Last Stock Split | 100% stock div. |
| Date of Last Split | 05/28/97 |
| Shares Outstanding (Mil) | 35.71 |

### Latest News

## CERTIFICATE OF SERVICE

I, Albert T. Powers III, hereby certify that on January 4, 2006, I electronically filed Appellant Lazard Frères & Co. LLC's Opening Brief on Appeal with the Clerk of the Court using CM/ECF which will send notification of such filings to the following:

**By CM/ECF and Hand Delivery**

| | |
|---|---|
| Mark Kenney, Esq.<br>Office of the United States Trustee<br>844 King Street, Room 2313<br>Wilmington, DE 19801 | Victoria Watson Counihan, Esq.<br>William E. Chipman, Jr., Esq.<br>Greenberg Traurig, LLP<br>The Brandywine Building<br>1000 West Street, Suite 1540<br>Wilmington, DE 19801 |

**By CM/ECF and First-Class Mail**

| | |
|---|---|
| William M. Austin, Esq.<br>NorthWestern Corporation<br>125 South Dakota Avenue, Suite 11<br>Sioux Falls, SD 57104-6403 | Warren H. Smith<br>Warren H. Smith & Assocs., P.C.<br>325 N. St. Paul, Suite 1275<br>Dallas, TX 75201 |

  /s/ Albert T. Powers III
Albert T. Powers III (I.D. No. 4490)